UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

GARY W. MUFFLEY, Regional Director
of the Ninth Region of the National Labor
Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD

                Petitioner

      v.                            Civil No. 1:14-7350

COBALT COAL LTD., WESTCHESTER COAL, L.P.,
AND COBALT COAL CORP. MINING INC.,
A SINGLE EMPLOYER

                Respondent

PETITION FOR PRELIMINARY INJUNCTION
UNDER SECTION 10(j) OF THE
NATIONAL LABOR RELATIONS ACT, AS AMENDED

      To the Honorable Judges of the United States District Court for the Southern District of West Virginia at Bluefield:

      COMES NOW, Gary W. Muffley, Regional Director of the Ninth Region of the National Labor Relations Board, herein the Board, and petitions this Court, for and on behalf of the Board, pursuant to Section 10(j) of the National Labor Relations Act, as amended [61 Stat. 149, 29 U.S.C. § 160(j)] herein called the Act, for appropriate injunctive relief, pending the final disposition of the matters pending before the Board on the complaint of petitioner alleging that Cobalt Coal Ltd., Westchester Coal, L.P., and Cobalt Coal Corp. Mining, Inc., a single employer, herein collectively called respondents, have engaged in, and are engaging in, acts and conduct in violation of Section 8(a)(1), (3) and (5) of the Act [29 U.S.C. § 158(a)(1), (3) and (5)]. In support thereof, petitioner respectfully shows as follows:

      1. Petitioner is the Regional Director of the Ninth Region of the Board, an agency of the

United States, and files this Petition for and on behalf of the Board.

2. Jurisdiction of this Court is invoked pursuant to Section 10(j) of the Act.

3. On August 27, 2013, the United Mine Workers of America, AFL-CIO, herein called the Union, pursuant to the Act, filed a charge with the Board alleging that respondents have been engaging in unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act. (A copy of the charge is attached hereto as Exhibit 1.)

4. The aforesaid charge was referred to petitioner as Regional Director of the Ninth Region of the Board.

5. (a) On December 10, 2013, upon the charge described above in paragraph 3, the General Counsel of the Board, on behalf of the Board, by petitioner, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)] issued a Complaint and Notice of Hearing, herein called, the Complaint. The allegations of the Complaint, as announced in the Notice of Hearing, were scheduled to be heard before an administrative law judge beginning on February 4, 2014. [1]/ (A copy of the Complaint is attached hereto as Exhibit 2a.)

(b) On February 3, 2014, the General Counsel of the Board, on behalf of the Board, by petitioner, pursuant to Section 10(b) of the Act [29 U.S.C. § 160(b)] issued an Amendment to the Complaint referenced above in paragraph 5(a). (A copy of the Amendment to the Complaint is attached hereto as Exhibit 2b.)

6. There is reasonable cause to believe that the allegations set forth in the Complaint are true, and that respondents have engaged in, and are engaging in, unfair labor practices within the meaning of Section 8(a)(1), (3) and (5) of the Act, affecting commerce within the meaning of Section 2(6) and (7) of the Act [29 U.S.C. § 152(6) and (7)]. More particularly, in support

---

[1] Pursuant to respondents' request, the hearing before an administrative law judge originally scheduled for February 4, 2014 has been rescheduled for February 10, 2014. The request to change the hearing date was opposed by petitioner and the Union.

2

thereof, and of the request for injunctive relief herein, petitioner, upon information and belief, shows as follows: [2]/

    7. (a) At all material times, respondents have been affiliated business enterprises with common officers, ownership, directors, management, and supervision; have formulated and administered a common labor policy; have shared common premises and facilities; have provided services for and made sales to each other; have interchanged personnel with each other; have interrelated operations within the coal mining industry; and have held themselves out to the public as a single-integrated business enterprise.

    (b) Based on its operations described above in paragraph 7(a), respondents constitute and have constituted at all material times a single-integrated business enterprise and a single employer within the meaning of Section 2(2), (6) and (7) of the Act. [29 U.S.C. § 152(2)., (6), (7)]

    8. (a) At all material times, respondents have been engaged in the mining of coal at the Westchester Mine located in Hensley, West Virginia in McDowell County.

    (b) In conducting its operations during the 12-month period ending November 7, 2012, respondents sold and shipped from Hensley, West Virginia goods valued in excess of $50,000 directly to Alpha Natural Resources, Inc., which operates a coal preparation plant located in the State of West Virginia, and is an enterprise directly engaged in interstate commerce that shipped goods valued in excess of $50,000 directly to points located outside the State of West Virginia.

    9. At all material times, the union has been a labor organization within the meaning of Section 2(5) of the Act. [29 U.S.C. § 152(5)]

---

[2]/ Representative affidavits gathered during the course of Petitioner's investigation of the charge are attached hereto as Exhibits 9-12. References to these Exhibits in support of the Petition are made in the supporting Memorandum.

10. At all material times, the following individuals have held the positions set forth opposite their respective names and have been agents of respondents within the meaning of Section 2(13) of the Act: [29 U.S.C. § 152(3)]

> Michael Crowder — CEO, Cobalt Coal Ltd.; Vice-President, Cobalt Coal Corp. Mining, Inc.
>
> Al Kroontje — Chairman of the Board of Directors, Director, Cobalt Coal Ltd.

11. (a) The following employees of respondents (the Unit) constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act: [29 U.S.C. § 159(b)]

> All full-time and regular part-time production and maintenance employees employed by [Respondents] at their Route 7, Hensley, West Virginia, Westchester Mine facility, but excluding all contract employees, all office clerical employees, and all professional employees, guards and supervisors as defined in the Act.

(b) On November 15, 2012, the Board certified the union as the exclusive collective-bargaining representative of the Unit (a copy of the Certification of Representative is attached hereto as Exhibit 3.

(c) At all material times, based on Section 9(a) of the Act, [29 U.S.C. § 159(a)] the union has been the exclusive bargaining representative of the Unit.

12. (a) Since about March 21, 2013 and continuing to date, the union has requested, in writing, that respondents furnish the Union with the information contained in the information request attached hereto as Exhibit 4.

(b) Since about June 26, 2013 and continuing to date, the union has requested, in writing, that respondents furnish the Union with the information contained in the information request attached hereto as Exhibit 5.

(c) About July 22, 2013, the union requested, in writing, that respondents furnish the union with the information contained in the information request attached hereto as Exhibit 6.

(d) About July 25, 2013, the union requested, in writing, that respondents furnish the Union with the information contained in the information request attached hereto as Exhibit 7.

(e) The information requested by the union, as described above in paragraphs 12 (a)-(d) is necessary for, and relevant to, the union's performance of its duties as the exclusive collective-bargaining representative of the Unit.

(f) Since about March 21, 2013, June 26, 2013, July 22, 2013 and July 25, 2013, respondents, by Michael Crowder, have failed and refused to furnish the union with the information requested by it as described above in paragraphs 12(a), (b), (c) and (d).

13. (a) At various times from about March 1 through June 20, 2013, respondents and the union met for purposes of negotiating an initial collective-bargaining agreement with respect to wages, hours, and other terms and conditions of employment.

(b) During the period described above in paragraph 13(a), respondents, through Michael Crowder, met union representatives for bargaining sessions with no intention of reaching agreement; cancelled and rescheduled bargaining sessions; failed and refused to provide relevant information as described above in paragraph 12; subsequent to June 20, 2013, failed and refused to provide the union with future dates of availability for bargaining; failed and refused to respond to union proposals; insisted upon proposals that were predictably unacceptable to the union; accused the union of inconveniencing respondents for having to meet with the union and "fool" around with the union; told the union that respondents did not need a union to deal with their employees; contracted out bargaining unit work; and engaged in a course of conduct

intended to frustrate the bargaining process with no intention of reaching a collective-bargaining agreement.

(c) By its overall conduct, including the conduct described above in paragraphs 12 and 13(b), respondents have failed and refused to bargain in good faith with the union as the exclusive collective-bargaining representative of the Unit.

14. (a) About November 7, 2012, respondents ceased performing their operations of mining coal at the Westchester Mine described above in paragraph 8(a) and laid off the Unit.

(b) About May 29, 2013, respondents entered into a contractual agreement with W.F. Coal Sales, Inc. (Contractor) for the Contractor to perform the work previously performed by the Unit prior to November 7, 2012 (A copy of the contractual agreement entered into by Westchester Coal, L.P. and W.F. Coal Sales, Inc. is attached hereto as Exhibit 8.

(c) As a result of respondents' conduct described above in paragraph 14(b), respondents failed to recall from layoff its employees:

| William Addair | Daniel Aaron Beavers | Bryan Harlow |
| --- | --- | --- |
| Raymond Aragon | Bruce Blankenship | William Hydon |
| Lance Barbour | James Bowles | Wendell Kenney |
| Phillip Barker | Eddie Branch Sr. | Brandon Scott Lowell |
| Lonnie Christian Jr. | Frederick Coleman | James Mitchem |
| William Mullins | Joseph Pack | Bobby Thompson |
| Johnny Simms | Richard Toler | Steven Simpson |
| Danny Smith | Mickle Thomas | |

(d) Respondents engaged in the conduct described above in paragraphs 14(b) and (c) because the Unit employees of respondents selected the union as their exclusive collective-bargaining representative and engaged in concerted activities, and to discourage employees from engaging in these activities.

6

(e) The subjects set forth above in paragraph 14(b) relate to wages, hours, and other terms and conditions of employment of the Unit and are mandatory subjects for the purposes of collective bargaining.

(f) Respondents engaged in the conduct above in paragraphs 14(b) and (c) without prior notice to the union and without affording the union an opportunity to bargain with it about the decision to contract out the Unit work at the Westchester Mine and to not recall unit employees from layoff.

15. By the conduct described above in paragraphs 12(f), 13(b), 13(c), 14(b), (c) and (f), respondents have been failing and refusing to bargain collectively with the exclusive collective-bargaining representative of its employees in violation of Section 8(a)(1) and (5) of the Act. [29 U.S.C. § 158(1), (5)]

16. By the conduct described above in paragraphs 14(b), (c) and (d), respondents have been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act. [29 U.S.C. § (1), (3)]

17. The unfair labor practices of respondents described above affect commerce within the meaning of Section 2(6) and (7) of the Act. [29 U.S.C. § 152(6), (7)]

18. Upon information and belief, it may fairly be anticipated that, unless enjoined by this Court, respondents will continue to engage in the acts and conduct aforesaid or similar or related acts in violation of Section 8(a)(1), (3) and (5) of the Act. [29 U.S.C. § 158(1), (3) and (5)]

19. Upon information and belief, unless the continuation of the aforementioned unfair labor practices is immediately restrained, a serious flouting of the Act will continue with the result that enforcement of important provisions of the Act and of public policy will be impaired

before respondents can be placed under legal restraint through the regular procedures of a Board order and enforcement decree. Unless preliminary relief is granted to require respondents to bargain in good faith with the union, respondents' actions, including their refusal to provide the union with information that is necessary and relevant to bargain, will continue to deprive employees unjustly of the benefits of collective bargaining. Interim relief is thus necessary to preserve the collective-bargaining process and salvage some of the bargaining equity that existed prior to respondents' violations. Ultimately, absent such relief, respondents will reap a dual benefit from its conduct by postponing or precluding the benefits to employees of a negotiated labor contract and, after the lengthy passage of time attendant to Board proceedings and subsequent Court judgment, by enjoying the benefit of negotiating with a union weakened by the unlawful bargaining delay. Additionally, respondents' outsourcing of bargaining unit work to a contractor and its subsequent failure to recall employees from layoff who exercised their Section 7 right to support the union, will chill employees' exercise of their statutory rights. Absent interim relief, the discriminates may scatter and be unavailable to accept reinstatement under an eventual Board order, thus rendering a Board remedy meaningless.

20. Upon information and belief, to avoid the serious consequences as set forth above, it is essential, appropriate and just and proper, for the purposes of effectuating the policies of the Act and avoiding substantial, irreparable and immediate injury to such policies, to the public interest, and to employees of respondents and in accordance with the purposes of Section 10(j) of the Act, that pending the final disposition of the matters involved herein pending before the Board, respondents be enjoined and restrained from the commission of the conduct alleged above, similar acts and conduct or repetitions thereof.

WHEREFORE, petitioner respectfully requests that this Court issue an order directing respondents to appear before this Court, at a time and place fixed by the Court, for a hearing on the issue as to why an injunction should not issue:

1. Enjoining and restraining respondents, their stockholders, officers, representatives, agents, servants, employees, attorneys, successors, alter egos and assigns and all members and persons acting in concert or participation with them, pending the final disposition of the matters involved herein pending before the Board, from engaging in the following acts and conduct:

(a) failing and refusing to furnish the union with requested information which is relevant to bargaining;

(b) meeting with union representatives for bargaining sessions with no intention of reaching agreement;

(c) unjustifiably cancelling and rescheduling bargaining sessions;

(d) failing and refusing to provide the union with future dates of availability for bargaining;

(e) failing and refusing to respond to union proposals;

(f) insisting upon proposals that were predictably unacceptable to the union;

(g) accusing the union of inconveniencing respondents by having to meet and/or "fool" around with the union;

(h) telling the union that respondents did not need a union to deal with its employees;

(i) contracting out bargaining unit work and subsequently failing to recall bargaining unit employees from layoff in derogation of the union's bargaining rights and for purposes of discouraging employees from supporting the union;

      (j) engaging in a course of conduct intended to frustrate the bargaining process with no intention of reaching a collective-bargaining agreement and;

      (k) in any other manner, interfering with, restraining or coercing employees in the exercise of their Section 7 rights.

  2. Ordering respondents to:

      (a) furnish the union with requested information which is relevant to bargaining;

      (b) meet with union representatives for bargaining sessions with the intention of reaching an agreement;

      (c) provide the union with future dates of availability for bargaining;

      (d) respond to union proposals in good faith;

      (e) refrain from insisting upon proposals that are predictably unacceptable to the union;

      (f) rescind its contract with W.F. Coal Sales, Inc. and resume operations with its unit employees at its Westchester coal mine as such existed prior to November 7, 2012;

      (g) engaging in a course of conduct which will facilitate the consummation of a collective-bargaining agreement;

      (h) mail copies of the Court's opinion and order to bargaining unit employees and post copies of same at respondents' Westchester Mine where notices to employees are customarily posted. Said postings shall be maintained during the Board's administrative proceedings free from all obstructions and defacements, and grant reasonable access to the facility to agents of the Board to monitor compliance with this posting requirement; and

      (i) within twenty (20) days of the issuance of the Court's order, file with the Court a sworn affidavit from one of respondents' responsible officials setting forth with specificity the

manner in which respondents have complied with the terms of the Court's decree. A copy of this sworn affidavit shall also be filed with the Regional Director of Region 9 of the Board.

3. That the Court grant such further and other relief as may be just and proper.

Dated at Cincinnati, Ohio this 4th day of February 2014.

Office of the General Counsel:

Robert F. Griffin Jr., General Counsel
Barry J. Kearney, Associate General Counsel
Elinor L. Merberg, Assistant General Counsel
Robert E. Omberg, Deputy Assistant General
Garey E. Lindsay, Regional Attorney

/s/ Gary W. Muffley
Gary W. Muffley, Regional Director
Region 9, National Labor Relations Board
3003 John Weld Peck Federal Building
550 Main Street
Cincinnati, Ohio 45202-3271

/s/ Daniel A. Goode
Daniel A. Goode #0086855
Counsel for the Petitioner
Region 9, National Labor Relations Board
3003 John Weld Peck Federal Building
550 Main Street
Cincinnati, Ohio 45202-3271

/s/ Jonathan D. Duffey
Jonathan D. Duffey #0069723 (Ohio)
Counsel for the Petitioner
Region 9, National Labor Relations Board
3003 John Weld Peck Federal Building
550 Main Street
Cincinnati, Ohio 45202-3271

Attachments

STATE OF OHIO            )
                         ) SS:
COUNTY OF HAMILTON       )

I, Gary W. Muffley, being first duly sworn, depose and say that I am Regional Director of the Ninth Region of the National Labor Relations Board; that I have read the foregoing Petition for Injunction under Section 10(j) of the National Labor Relations Act, as amended, and know the contents thereof; that the statements therein made as upon personal knowledge are true and those made upon information and belief, I believe to be true.

/s/ Gary W. Muffley
Gary W. Muffley, Petitioner

Subscribed and sworn to before
me this 4th day of February 2014.

/s/ Marlene M. L. Dole
Marlene M. L. Dole
Notary Public, State of Ohio
My commission expires on May 23, 2015.
Section 147.03 O. R. C.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

GARY W. MUFFLEY, Regional Director
of the Ninth Region of the National Labor
Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD

                Petitioner

    v.                                                Civil No.

COBALT COAL LTD., WESTCHESTER COAL, L.P.,
AND COBALT COAL CORP. MINING INC.,
A SINGLE EMPLOYER

                Respondent

## INDEX OF EXHIBITS TO PETITION

Exhibit 1 .................................................................. Original charge filed in Case 09-CA-112146

Exhibit 2a ................................................ Complaint and Notice of Hearing in Case 09-CA-112146

Exhibit 2b ............ Amendment to the Complaint and Notice of Hearing in Case 09-CA-112146

Exhibit 3 ..................................................... Certification of Representative in Case 09-RC-091047

Exhibit 4 .................................................................................. March 21, 2013 Information Request

Exhibit 5 ................................................................................... June 26, 2013 Information Request

Exhibit 6 .................................................................................... July 22, 2013 Information Request

Exhibit 7 .................................................................................... July 25, 2013 Information Request

Exhibit 8..................................................................May 29, 2013 Contract Mining Agreement

Exhibit 9......................................................................April 11, 2013 Affidavit of Jerry Massie

Exhibit 10.......................................................................April 11, 2013 Affidavit of Joe Carter

Exhibit 11..............................................................September 4, 2013 Affidavit of Jerry Massie

Exhibit 12................................................................September 4, 2013 Affidavit of Joe Carter

Exhibit 13......Cobalt Coal Ltd. Consolidated Financial Statements: December 31, 2012 and 2011

Exhibit 14..........Cobalt Coal Management Discussion and Analysis year end December 31, 2010

Exhibit 15....................................................Cobalt Coal Corp. November 29, 2010 News Release

Exhibit 16..............................Printout from Cobalt Coal Ltd.'s website www.cobaltcoalcorp.com

Exhibit 17........................Cobalt Coal Management Discussion and Analysis September 30, 2013